Howard Hertz
Victor M. Norris
Robert P. Geller
Steve J. Weiss [2]
Walter J. Piszczatowski
Kenneth F. Silver
Gerald P. Cavellier
Lisa D. Stern
Eva T. Cantarella
Steven P. Jenkins
Elizabeth C. Thomson
Daniel W. Rucker
Laurie S. Raab
Joseph A. Bellanca
Matthew J. Turchyn
Catrina Farrugia
Fallon Yaldo
Cristina M. Crescentini [3]
John Monnich, Jr. [3]
Eric D. Berlin
Kristen H. Randall
Donna Virkus

# HERTZSCHRAMPC

www.hertzschram.com

wallyp@hertzschram.com

north:
(mail center)
1760 S. Telegraph Rd
Suite 300
Bloomfield Hills, MI 48302
ph: 248.335.5000
fax: 248.335.3346

downtown:
Chrysler House
719 Griswold St.
Suite 270
Detroit, MI 48226
ph: 313.438.5001
fax: 313.438.5002

Of Counsel:
Bradley J. Schram[1]
Jeffrey A. Robbins[3]
Judge Edward Sosnick (RET.)
Herschel P. Fink[2]
Scott G. Weinberg
Alexander Slotland[4]
James K. Friedman
Michael J. Rex

[1] Also Member of Fla. & D.C. Bars
[2] Also Member of Fla. Bar
[3] Also C.P.A. and LL.M. in Taxation
[4] Also Member of N.Y. Bar
[5] Also Member of California Bar

August 23, 2023

**VIA HAND DELIVERY**

Hon. Linda V. Parker
United States District Court
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 204
Detroit, MI 48226

Re:   USA v. Markovitz
      Case No. 23-cr-20058

Dear Judge Parker:

Alan Markovitz is scheduled to appear before the Court for sentencing on August 30, 2023, following his guilty plea to aiding and abetting, the making of a false statement contrary to 18 U.S.C. §1001. The parties agree that the advisory U.S. Sentencing Guidelines range ("Guidelines") in this case is 0 – 6 months, total offense level 6, in Zone A. Given the advisory Guideline range and the relevant information contained in the thorough and well written Presentence Investigation Report ("PSIR") compiled by Senior United States Probation Officer ("USPO") ▮▮▮▮▮▮▮▮, as well as the additional information contained in this letter, which I hope will assist the Court in fashioning a proper sentence that is "sufficient but not greater than necessary" to achieve the goals of sentencing under 18 U.S.C. §3553 ("§3553") (a concept and language certainly well known to this Court)[1] I respectfully request a probationary sentence on Mr. Markovitz's behalf (hereafter "Markovitz" or "Alan"). I further submit that consideration of all the §3553 factors warrants a sentence of probation as that is sufficient to achieve all the statute's objectives in this case.

A humble and contrite Alan Markovitz comes before this Court having accepted responsibility for his conduct via his plea of guilty. It need not be repeated how sorry and embarrassed he is that he put himself in this situation. As Alan said during the course of his interview with USPO ▮▮▮▮ he is not only remorseful and regretful, but fully recognizes how

---

[1] As a result, counsel will forego the recitation of much of the boilerplate language associated with the Guidelines and the application of the 18 U.S.C. §3553 factors.

**HERTZ SCHRAM**
ACCESS EXCELLENCE

Hon. Linda V. Parker
August 23, 2023
Page 2

"stupid" his decision-making process was when he agreed to help Mr. Szolack. As the Court is well aware, this case stemmed from Mr. Szolack's request of Alan to buy his house, a "favor" which he, of course, now realizes he should have declined from the start, as he would never have been in this situation had he done so. Alan has learned a life lesson the hard way, that is, do your homework first, take time to evaluate the situation and do the right thing, and even contact your lawyers for advice. Alan has taken these words to heart and has promised me that we will never find him in a similar situation again.

To put it mildly, Alan is highly embarrassed by his conduct, the charges, and how he arrived before the Court. It has been a long road. Indeed, the charges contained in the Information reflect conduct from early 2018. What is essential for this Court to know is that Alan has cooperated with the Government before and during that timeframe and has been in negotiations with the Government, for a number of years, since then to resolve this matter. It is also important to note that during the entire time period of the Government's investigation, Alan has continued to work as hard as ever, and was able to maintain his focus in spite of what has admittedly weighed on him heavily over those many years. He poses absolutely no danger to the public and has during this entire time period lived a law-abiding life and will continue to do so. Perhaps most importantly, he has internalized the wrongfulness of his conduct, come to grips with it, and, as devastating and unacceptable as it is – it has had a positive impact on him. He has engaged, as a result of it, in his own continuing post-offense rehabilitative conduct and reexamined his values and what is truly important in life. He is thus fully committed to never travel this path again and has taken active steps to ensure living a lawful life by changing his way of thinking and by taking steps to make amends for what he did.

As those who know him would expect, Alan has not only accepted full responsibility for his actions but has gone beyond merely agreeing to plead guilty by cooperating with the United States Government in its investigation (and prosecution) of various cases. His most recent instances of cooperation were instrumental in obtaining guilty pleas from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. However, his prior cooperation with the U.S. Government on other matters is also highly relevant to the Court in determining an appropriate sentence pursuant to §3553.

Indeed, in most cases, a motion for downward departure under U.S.S.G. §5K1.1 outlining the terms of his cooperation and, the results of that cooperation would have been filed as a result of his cooperation. (See Exhibit "A"). Here, however, such a motion is unnecessary, and would be superfluous given the applicable and agreed upon 0 – 6 month advisory Guideline range. Alan's cooperation, both more recent since the date of the offense, and prior thereto is clearly a relevant and highly significant factor for this Court's consideration in reaching and imposing an appropriate sentence. Cf. *United States v Fernandez*, 443 F.3d 19, 33 (2nd Cir. 2006)("We agree that in formulating a reasonable sentence, a sentencing judge ... should take under advisement ... the contention that if the defendant made efforts to cooperate, even if those efforts did not yield a government motion for a downward departure pursuant to U.S.S.G. §5K1.1 ...") In *United States v Ochoa-Ramos*, ___ F.Supp. ___, 2008 WL 2062341, at *3 (E.D. Wis. May 13,

{H1008752.2}

**HERTZSCHRAM**
ACCESS EXCELLENCE

Hon. Linda V. Parker
August 23, 2023
Page 3

2008) the court considered the defendant's cooperation with the government as evidence of the defendant's positive character and acceptance of responsibility under §3553(a), beyond the acceptance of responsibility reduction contained in U.S.S.G. §3E1.1 and despite the absence of a §5K motion from the Government. Post *Booker*, it is appropriate to point out that Alan's cooperation reflects his efforts to atone, to turn his life around, and to rehabilitate himself evidenced by the significant amount of cooperation he provided to various federal authorities in various jurisdictions, ████████████████████████████████████. His cooperation reduces the likelihood of any possible recidivism and is a beneficial part of his history and characteristics. Therefore, it is suggested that a sentence at the lowest end of the Guidelines range (probation/supervised release) is appropriate. Indeed, *U.S. v. Robinson*, 741 F.3rd 588, 599 (5th Cir. 2014) has also held in joining sister circuits that a sentencing court has the power to consider a defendant's cooperation under §3553(a) irrespective of whether the Government files a §5K1.1 motion and that a court's failure to recognize such discretion to consider cooperation under §3553(a)(1) is a significant procedural error. Finally, the Sixth Circuit has similarly held in *U.S. v. Massey*, 663 F.3d 852 (6th Cir. 2011) citing additional Sixth Circuit authority that even if no §5K1.1 motion is filed, the court has the discretion to take into account a defendant's cooperation as a mitigating factor.

**Cooperation**

Alan's cooperation with the Government first commenced over 30 years ago in the late 1980's, when Alan testified as a key fact witness in what he remembers was a federal ████ ████████ prosecution involving individuals who were ultimately convicted as a result of their involvement in a conspiracy ████████████████████ ████████ ████████████. Alan remembers the trial at which he testified took place in the federal courthouse in ████████ ████████ Two men ████ ████████████████ were ultimately convicted and Alan, as a fact witness for the Government, provided evidence including ████████ testimony, leading to their ultimate conviction.



**HERTZSCHRAM**
ACCESS EXCELLENCE

Hon. Linda V. Parker
August 23, 2023
Page 4

In 2015-16, Alan traveled to ▒▒▒▒▒▒▒▒▒ and attempted to assist the FBI and the IRS investigate a suspected fraud and tax case involving a ▒▒▒▒▒ corporation. That corporation (and its principals) was suspected of ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ ▒▒▒▒▒▒▒▒▒▒▒ in order to impair and impede the IRS from collecting the proper amount of tax due and owing. During the course of his cooperation, Alan provided significant information while meeting with the federal investigating agencies involved and ▒▒▒▒▒▒▒▒▒▒▒▒▒▒ He met representatives of the corporate entity ▒▒▒▒▒▒▒ ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒. Although the case was never criminally prosecuted due to issues unrelated to Alan's cooperation, what is significant for this Court's consideration is his willingness to spend significant time and effort to assist the Government in its investigation of suspected wrongdoers.

In 2017-18, Alan assisted ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ and the U.S. Government in a significant tax prosecution. ▒▒▒▒▒▒▒▒▒▒▒▒ ▒▒▒▒▒▒▒▒▒▒▒ Alan's cooperation against defendant, ▒▒▒▒▒▒▒ was significant and ultimately ▒▒▒▒▒▒▒▒ Alan gathered and then provided various financial and related documents to the IRS in ▒▒▒▒▒▒ which involved a sale of a business involving Alan Markovitz and ▒▒▒▒▒▒ Alan not only provided significant documentation which, if necessary, would have been converted into exhibits for use in the trial, but also helped gain ▒▒▒▒▒ plea-based conviction by providing information regarding the documents and effectively helping blackboard for the Government the chain of events important to some of the counts in ▒▒▒▒ prosecution. While Alan was fully prepared to and actually met with the Government in preparation for his role as a witness in the case against ▒▒▒▒ his trial testimony was never needed as ▒▒▒▒ ultimately pled guilty and was given a custodial sentence by ▒▒▒▒▒



Most recently, Alan was prepared to testify as a victim and witness in a case involving ▒▒▒▒▒▒▒▒▒▒▒ which was prosecuted by the U.S. Attorney Office, Eastern District of Michigan before ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ was charged with wire fraud by utilizing fake contracts which were purportedly entered into with legitimate corporations in order to defraud various investors. ▒▒▒▒ solicited investors ▒▒▒▒▒ fraudulently representing that he had secured a number of very lucrative contracts for his business. Alan once again gathered and organized crucial documents and provided them to the Government for their use in the successful prosecution of ▒▒▒▒. There were several victims of ▒▒▒▒ fraud (including civil litigants), and the criminal case involved over one million dollars being fraudulently obtained as a result of the fraud. Much of it was Alan's money. Alan was

Case 2:23-cr-20058-LVP-KGA ECF No. 28, PageID.266 Filed 07/30/24 Page 5 of 9

**HERTZSCHRAM**
ACCESS EXCELLENCE

Hon. Linda V. Parker
August 23, 2023
Page 5

interviewed by the FBI in this case and was fully prepared to testify against ▮▮▮▮▮ at trial. However, ▮▮▮ recently pled guilty to wire fraud, so the trial in which Alan was going to be the primary victim witness was no longer necessary. As a result of Alan's cooperation, someone who would have otherwise avoided prosecution and possibly would have continued to defraud other unsuspecting victims was brought to justice.

Cooperation of this amount and quality goes far beyond what is required under the Guidelines for a mere reduction for acceptance of responsibility. In *Williams v. New York*, 337 U.S. 241 (1949), the Supreme Court long before the promulgation of the Guidelines recognized that merely a defendant's admission of responsibility or expression of contrition is often a significant step toward rehabilitation and for that reason deserving of a possible reward in the form of a lesser sentence. Here, Alan has done much more. Indeed, as Justice Powell once wrote, referring to a cooperating defendant:

> Few facts available to a sentencing judge are more relevant to the likelihood that [a defendant] will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career [and] the degree to which he does or does not deem himself at war with his society.

*U.S. v. Hendrix*, 505 F.2d 1233, 1236 (2nd Cir. 1974)

Alan is clearly at peace with society. He is a highly successful entrepreneur and productive member of society. He has exhibited not only extreme remorse for his conduct but has expressed and evidenced his desire and willingness to cooperate with the Government in order to make amends for his criminal conduct. Most importantly, he is on a path to do the right thing and continues on that path to this day.

One of the strongest indicators of a defendant's rehabilitation, and the likelihood that he will not transgress again is his post-offense conduct. Here, *Gall v. U.S.*, 552 U.S. 38 (2007) is instructive and, it is clear that in spite of the fact that there is no need for, and, therefore, no motion for downward departure filed pursuant to U.S.S.G. §5K1.1, given his Guidelines range, a sentencing variance for cooperation would be warranted, even without such make a formal motion. *U.S. v. Knox*, 573 F.3d 441, 453 (7th Cir. 2009); *U.S. v. Zolp*, 479 F.3d 715 (9th Cir. 2007); *U.S. v. Fernandez*, 443 F.3d 19 (2nd Cir. 2006); *U.S. v. Doe*, 398 F.3d 1254 (10th Cir. 2005). For the above reason, alone, it is clear that Alan presents no risk of recidivism and should be sentenced at the very lowest end of the advisory Guidelines range.

## Disparate Sentencing Considerations

Alan's culpability should be evaluated in light of his specific offense conduct and relative to how the Court has sentenced Ronald Szolack, in a companion case #23-cr-20020. "[D]istrict courts have discretion, in appropriate cases, to align co-defendants' sentences somewhat in order to reflect comparable degrees of culpability – at least in those cases where disparities are

{H1008752 2}

**HERTZ SCHRAM**
ACCESS EXCELLENCE

Hon. Linda V. Parker
August 23, 2023
Page 6

conspicuous and threaten to undermine confidence in the criminal justice system." *U.S. v. Martin,* 520 F.3d 87, 94 (1st Cir. 2008) (affirming district court's decision to impose a below-the-range sentence to align defendant's sentence with those imposed on his co-defendants). The court found that when sentencing defendants such as those charged in this and related cases, this Court should consider each defendant's relative culpability to ensure sensible calibration of the sentences. In fact, various courts have decried the "profoundly corrosive" effects of "disparate sentences," which are "[p]robably as corrosive as anything that can happen in the criminal justice system." *See, U.S. v. Bizzack,* No. 19-cr-10222 (D.Mass. October 30, 2019). That disparity warrants a below Guidelines sentence is strengthened by *Booker* and *Gall v. U.S.,* 128 S.Ct. 586 (2007). (districts court's sentence of probation reasonable – rejecting argument that probation was disparate with prison sentences received by co-defendant because judge "also considered the need to avoid unwarranted similarities among co-conspirators who were not similarly situated"); *U.S. v. Presley,* 547 F.3d 625 (6th Cir. 2008) (where defendant convicted of drug distribution and Guidelines of 360 months to life, it was reasonable for district judge on remand to impose 120 month sentence in light of similar sentence imposed on co-defendant who, by happenstance, had some evidence suppressed, but who otherwise was equally culpable as defendant, relying on 18 U.S.C. §3553(a)(6) ("need to avoid unwarranted disparities")) See, also, *U.S. v. Smart,* 500 F.3d 800 (10th Cir. 2008); *U.S. v. Willis,* 476 F.3d 103 (2nd Cir. 2007); *U.S. v. Parker,* 462 F.3d 273 (6th Cir. 2006) (although §3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so … and the sentencing court may reasonably consider sentencing disparity of co-defendants in imposing sentence). The PSIR undoubtedly noted the sentence in the related companion case for this very reason and given the significant beneficial and truthful cooperation that Alan has provided to the Government on so many occasions over the years, it seems only fair that his sentence should be even lower than in the companion case.

### A Successful Businessman With a Long & Steady Employment History

As this Court can readily glean from the PSIR, Alan is a very successful businessman. He has been working his entire adult life and even at the age of 68, he continues to work full-time and with the same energy and dedication level as when he was a much younger man. In fact, Alan has never been without a job since his early days as a 12-year-old paperboy. After his stint as a paperboy, he began working with his Dad as a television repairman, making house calls and going to various homes while assisting his Dad (a Holocaust survivor with whom he still enjoys a very strong and loving relationship[2]) repair TVs and various electronic devices. But, after spending a few years doing this, he found his true niche would be as a businessman. He started working in a lounge as a bartender but was quickly promoted to manager; and it was then that he realized what he really wanted to do was to own his own club and cut his own path as an entrepreneur in the industry. While he is an intelligent and thoughtful individual, he knew that his best path in life was to follow his passion as an entrepreneur, and not as an academic. While he attended college for a few years, his skills lie not in the books, but rather, in his creativity, his

---

[2] Alan enjoys, as the PSIR recognizes, a very strong and close relationship with all his family.

**HERTZ SCHRAM**
ACCESS EXCELLENCE

Hon. Linda V. Parker
August 23, 2023
Page 7

extraordinary work ethic, and his desire to be the best in his field. And, as the Court can see, he has been quite successful doing so. So, after over 40 years of hard work and overcoming many obstacles, it is at the age of 68 that Alan owns interests in various clubs across the country.

In short, Alan has displayed an exceptional work ethic and a long, steady employment history. While there is nothing exceptional about that claim in and of itself, Alan's definition of full-time work is not merely a 60-hour work week, it is a totally immersive 24/7 schedule which he has maintained since his early days. It is also important to note that, unlike some defendants, Alan did not sit idly by after he became aware of this investigation. Due to his drive and no-nonsense approach, he continued to expand his entrepreneurial efforts rather than to allowing them to contract. Instead of using his lack of education and formal training as an excuse to fail, Alan has worked harder than the average person and his competitors in order to succeed. He simply out-creates and out-works his competition. Nor, did he simply rest on his laurels once he became a "success," but to this very day he continues to work as hard as anyone I know. This, too, is relevant for the Court because even under the mandatory Guidelines, it was recognized that a long history of full and gainful employment can provide an appropriate basis for mitigation. Clearly that concept continues to be applicable under the advisory Guidelines and is thus very relevant to this Court's consideration in fashioning an appropriate sentence.

Various federal courts including the Sixth Circuit have also recognized that "older" defendants present very low risks of recidivism, and they are very unlikely to reoffend and, therefore, pose no danger to the public. *U.S. v. Cherry,* 47 F.3d 366 (6th Cir. 2007). Indeed, it is recognized that defendants "over the age of 40 … exhibit markedly lower rates of recidivism in comparison to younger defendants." *U.S. v. Waldena,* 490 F.3d 735 (8th Cir. 2006). Alan is now 68 years old and although he is not elderly in his own mind, his chronological age and the specific and unique combination of factors which led to this offense – which have now been eliminated, make him statistically highly unlikely to reoffend. A sentence of probation would help guarantee his continued law-abiding conduct in the future while providing a sentence that satisfies all §3553 factors.

Additionally, Alan has also made a significant payment in order to help atone and make up for his conduct. Indeed, he agreed to (and did) forfeit $1.3 million in connection with full payment of a hotly disputed claim with the Government. His payment is yet another significant factor this Court should consider as not only part of his acceptance of responsibility but his history, characteristics, and the deterrence this Court's acceptance of the Rule 11 plea agreement will bring, as it clearly furthers any goal of general deterrence. It is also recognized by numerous courts that such payments helps exhibit extraordinary acceptance of responsibility.

Alan has been able to accomplish much and overcome many significant obstacles on his way to becoming a successful entrepreneur. As a success in the industry, he has been targeted by various competitors in many ways, but has always prevailed and come out on top, due in large part to his uncompromising work ethic and his willingness to put in whatever time it takes to be successful. The Court need only speak with him for a brief time to know that he is a thoughtful,

{H1008752 2}

ACCESS EXCELLENCE

**HERTZSCHRAM**
ACCESS EXCELLENCE

Hon. Linda V. Parker
August 23, 2023
Page 8

deliberate, and really respectful person with a good heart. I have come to know him very well over the many years I have represented him, and we have had many heart-to-heart talks, so I know he is a complex individual with a complex set of life circumstances which carry with them Alan's own unique human frailties. While not a perfect person, to his credit he has successfully labored under the sword of Damocles which this investigation has been over his head … a cloud which followed him for many years. Through it all though, he has maintained an even keel and a desire to put this matter behind him and to continue his career and, more importantly, to continue working uninterrupted by the thoughts and fears he has experienced because of his conduct.

Sometimes even good hard-working people who are productive citizens, commit crimes and need a second chance and a reason to refocus. Those same people don't necessarily have the ability to get character letters or, as in this case, are too proud to do so – which is definitely the situation here. In spite of all those people who know him and have offered and would be willing to write letters on his behalf, including his family, friends, employees, and business acquaintances, Alan is literally too proud to ask for help. Rather, he believes he should deal with his own problems and not involve others. As he stated to me, "I got myself into this situation, so why should I bother other people and involve them in my problems?" When I discussed with him whether he wanted to get letters from folks that he did business with, employed, etc., he said he was simply uncomfortable bothering family or friends to write letters on his behalf. Of course, knowing Alan as I do, that makes total sense. But what is very clear based on the hours I have spent with him is what you see with Alan is what you get. He puts on no airs. If I would be allowed to speak for him and quote him, he would say he made a terrible decision, and will regret it for the rest of his life, not only because of the consequences he has suffered but, because this case shows him at his worst and not the person that he really is, and always strives to be.

Hopefully providing this information demonstrates to the Court that Alan is not a person who needs one minute of incarceration to protect society. He is not a person who the Court will need to remind that he has violated the law. He knows he did. He will follow to the letter whatever sentence the Court imposes as he has followed all the rules, not only while on pretrial release, but during the course of this entire investigation and saga which has lasted for well over five years. As such, he was effectively on and successfully completed years of probation. e has focused on his future and has done what he could to make amends. In short, he is not someone who requires a sentence that will reform or rehabilitate him. Nor, does he need a sentence to deter him from reoffending. Thus, as his counsel, I respectfully request a probationary sentence similar to (or lower than) that imposed on Mr. Szolack in a related case. The punitive aspect that even a probationary type of sentence can carry should not be overlooked, especially in a case like this.[3]

---

[3] Similar concepts apply to a sentence containing conditions of supervised release. Such a sentence is punishment in and of itself as the U.S. Supreme Court has held and detailed in *U.S. v. Gall*, 552 U.S. 38 (2007), as the result of the many restrictions of freedom and constant reminder of those restrictions as well as the repercussions of any such violations in connection with such a sentence.

{H1008752 2}


**HERTZ SCHRAM**
ACCESS EXCELLENCE

Hon. Linda V. Parker
August 23, 2023
Page 9

This Court must consider a variety of factors and respond to a number of concerns that are unique to Alan and this case. Now, however, the Court can consider even previously disallowed factors, in fashioning a sentence given *Booker* and in its progeny. Pursuant to §3553 and in light of the various factors present, including his significant cooperation and attempts at cooperation, his age, his full acceptance of responsibility, his payment of restitution, his family circumstances and background, his extremely strong employment record, and his post-offense conduct, 18 U.S.C. §3553 strongly militates in favor of a probationary sentence.

The upcoming sentencing is high water mark for Alan. He can finally put the anxiety and negative thoughts which he has had to live with over these years, behind him. There is something positive about the finality which August 30, 2023, will bring. Probation is a reasonable and rationale sentence based on all the relevant §3553 factors. There is no need to protect the public from further crimes of this defendant; there will be none. Given his background, his personal history and characteristics, his entrepreneurial spirit and success, I would request that the Court impose a sentence similar to that of Mr. Szolack; i.e., to a sentence of no more than one-year supervised release.

I thank the Court for its review and consideration of this letter and stand ready to answer any questions the Court might have prior to imposing sentence.

Sincerely,

Walter J. Piszczatowski

WJP/fvs
Enclosure
cc:     AUSA Karen Reynolds (via email and hand delivery)

        Alan Markovitz (via email)
        Harold Fried, Esq. (via email)